IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SOLID Q HOLDINGS, LLC, <br><br> Plaintiff, <br> v. <br><br> ARENAL ENERGY CORPORATION et al., <br><br> Defendants. | **MEMORANDUM DECISION AND ORDER DENYING MOTION TO COMPEL ARBITRATION** <br><br> Case No. 2:15-cv-00419-DN <br><br> District Judge David Nuffer |

Plaintiff Solid Q Holdings, LLC ("Solid Q") filed a complaint against Defendant Arenal Energy Corporation ("Arenal"), claiming, among other things, that Arenal made "untrue statements of material fact and omitted material facts" prior to receiving a loan from Solid Q.[1] Arenal moved to compel Solid Q to arbitrate its claims ("Motion").[2] Solid Q opposes Arenal's Motion.[3] For the reasons stated below, Arenal's Motion is DENIED.

In Arenal's reply to Solid Q's opposition to the motion to compel, Arenal moves to dismiss Solid Q's claims on *forum nonconveniens* grounds.[4] Arenal acknowledges that a reply to the motion to compel "is not the appropriate mechanism for fully briefing a forum inconveniens argument,"[5] but nevertheless Arenal's purported motion to dismiss triggered additional memoranda from both parties.[6] Because a reply memorandum on a motion to compel is not the

---

[1] Complaint ¶ 74, docket no. 2, filed June 15, 2015.

[2] Motion to Compel Arbitration ("Motion"), docket no. 23, filed Nov. 9, 2015.

[3] Opposition to Motion to Compel Arbitration ("Opposition"), docket no. 25, filed Nov. 24, 2015.

[4] Reply to Plaintiff's Opposition to Defendant Arenal Energy Corporation's Motion to Compel Arbitration ("Reply") at 10, docket no. 26, filed Dec. 8, 2015.

[5] *Id*.

[6] *See* Opposition to Defendant's Motion to Dismiss that was Included in Defendant's Reply to Plaintiff's Opposition to Defendant Arenal Energy Corporation's Motion to Compel Arbitration, docket no. 27, filed Dec. 22, 2015;

appropriate mechanism for moving to dismiss a claim,[7] and because neither party sought leave of court to file additional memoranda,[8] the additional memoranda that debate the purported motion to dismiss are entirely disregarded and not considered in this decision.

## BACKGROUND

On July 5, 2012, Solid Q extended a loan to Arenal, for which the two entities executed a promissory note ("Note").[9] The Note was fully integrated,[10] but did not contain an arbitration clause. Although the parties amended the Note,[11] they never added an arbitration clause.

On October 15, 2012, Arenal entered into separate contracts with Solid Q's principals, Shaun and Brittni Shelton ("Sheltons"), for their individual consulting services ("Consulting Agreements").[12] The Consulting Agreements were also fully integrated,[13] but, unlike the Note, they contained arbitration clauses which stated that "The Parties . . . agree to submit any dispute pertaining to this Agreement to arbitration prior to commencing any legal action."[14] Solid Q was not a party to the Consulting Agreements.[15]

Solid Q filed the present lawsuit, alleging Arenal made numerous material misrepresentations and omissions of material fact which Solid Q relied upon when it entered into

---

Response to Opposition to Defendant's Motion to Dismiss that was Included in Defendant's Reply to Plaintiff's Opposition to Defendant Arenal Energy Corporation's Motion to Compel Arbitration, docket no. 28, filed Dec. 30, 2015.

[7] DUCivR 7-1(b)(1)(A) ("No motion . . . may be included in a response or reply memorandum. Such motions must be made in a separate document.").

[8] DUCivR 7-1(b)(2)(B) ("No additional memoranda will be considered without leave of court.").

[9] Motion at 9.

[10] Promissory Note at 4, Ex. 1 to Opposition, docket no. 25-1, filed Nov. 24, 2015.

[11] Motion at 10.

[12] *Id*.

[13] Advisory Board – Brownfield Site Consulting Agreement ("Consulting Agreement") at 4, ¶ 10, Ex. A to Motion, docket no. 23-1, filed Nov. 9, 2015.

[14] *Id*. at 5, ¶ 12.

[15] *Id*. at 1 (stating Consulting Agreement is "by and between Arenal Energy Corporation . . . and Shaun Shelton . . . ").

the loan and executed the Note.[16] Arenal filed the instant Motion to Compel Arbitration, seeking to enforce the arbitration provisions in the Consulting Agreements against Solid Q.[17] Arenal argues that, although Solid Q was not a signatory to the Consulting Agreements, Solid Q should be required to arbitrate its claims based on the Note because the Federal Arbitration Act[18] "creates a presumption in favor of arbitrability and courts must resolve all doubts concerning the scope of arbitrable issues in favor of arbitration."[19] Arenal argues that arbitration should be compelled because the arbitration clauses in the Consulting Agreements are "broad and extend to all disputes," and because "[a]ll of Plaintiff's claims, and Defendant's prospective counter-claims and affirmative defenses, are based entirely on the same facts, relationships and inseparable disputes."[20]

Solid Q asserts that Arenal is collaterally estopped from raising the arbitration argument[21] as the Utah Court of Appeals has already decided this very issue against Arenal.[22] Additionally, Solid Q argues it never agreed to arbitration, and therefore cannot be required to do so.[23] Solid Q is incorrect with regard to collateral estoppel, but is correct that it cannot be compelled to submit to arbitration since it was not a party to any contract with Arenal containing an arbitration provision and the arbitration provision cannot be read so broadly as to require Solid Q, a non-signatory, to submit to arbitration.

---

[16] *E.g.*, Complaint ¶¶ 72-78, docket no. 2.

[17] Motion at 7.

[18] 9 U.S.C.A. § 1 *et seq.*

[19] Motion at 2.

[20] *Id*. at 19 (emphasis omitted).

[21] Opposition at 5.

[22] *See Solid Q Holdings, LLC v. Arenal Energy Corp.*, 362 P.3d 295 (Utah Ct. App. 2015).

[23] Opposition at 8–9.

# DISCUSSION

## I. Collateral Estoppel Does Not Apply Because the Utah Court of Appeals' Decision Is Not a Final Judgment on the Merits

Federal courts generally apply collateral estoppel to issues decided by state courts "whenever the courts of the State from which the judgments emerged would do so[.]"[24] In Utah, collateral estoppel applies when the following four elements are met:

> (i) the party against whom issue preclusion is asserted must have been a party to or in privity with a party to the prior adjudication; (ii) the issue decided in the prior adjudication must be identical to the one presented in the instant action; (iii) the issue in the first action must have been completely, fully, and fairly litigated; and (iv) the first suit must have resulted in a final judgment on the merits.[25]

"If the only issue before the court is whether to compel arbitration, an order compelling arbitration is a final decision because it effectively ends the controversy between the parties and leaves no claims pending before the district court."[26] However, an order *denying* the motion to compel arbitration "neither end[s] the controversy between the litigants nor dispose[s] of the subject matter of the litigation" and is not a "final judgment" for purposes of collateral estoppel.[27]

The Utah Court of Appeals' denial[28] of Arenal's motion to compel arbitration did not resolve Solid Q's substantive claims against Arenal in the state case. Therefore, the judgment did not dispose of the case as to the parties or dispose of the subject-matter of the litigation on the

---

[24] *Allen v. McCurry*, 449 U.S. 90, 96 (1980).

[25] *Oman v. Davis Sch. Dist.*, 194 P.3d 956, 965 (Utah 2008).

[26] *Am. Family Ins. v. S.J. Louis Constr., Inc.*, 349 P.3d 772, 774 (Utah Ct. App. 2015); *see also DFI Prop., LLC v. GR 2 Enter., LLC*, 242 P.3d 781, 785 (Utah 2010).

[27] *Id*.

[28] Opposition at 3-4 ("On November 12, 2015, the Utah Court of Appeals issued a decision on Defendant's state appeal . . . affirming the Fourth District Court's ruling that denied Defendant's motion to compel arbitration." (citing *Solid Q Holdings LLC*, 2015 UT App 272, ¶ 12)).

merits. Therefore, the judgment is not final under Utah law, and collateral estoppel does not apply.

> II. **Solid Q is Not Bound by the Arbitration Clause Because Its Claims in this Federal Case Fall Outside the Scope of the Consulting Agreements**

The Federal Arbitration Act provides that arbitration provisions in contracts "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[29] The U.S. Supreme Court has recognized that the Federal Arbitration Act does not "purport[] to alter background principles of state contract law regarding the scope of [arbitration] agreements (including the question of who is bound by them)."[30] The Consulting Agreements contain a choice of law provision stating that the "laws of the State of Texas" govern.[31] Therefore, Texas contract principles apply in determining the scope of the Consulting Agreements—including the question of whether Solid Q, a non-signatory, may be bound by the Consulting Agreements through its principals, who were signatories.

In Texas, "[a] party seeking to compel arbitration under the [Federal Arbitration Act] must establish that (1) there is a valid arbitration clause, and (2) the claims in dispute fall within that agreement's scope."[32] The first prong of this test is satisfied since there is no dispute that the arbitration clauses in the Consulting Agreements are valid. However, Arenal fails to satisfy the second prong because it cannot show Solid Q was a party to the Consulting Agreement, and therefore Arenal fails to show the claims being raised by Solid Q in this lawsuit fall within the scope of the arbitration clauses.

---

[29] 9 U.S.C.A § 2.

[30] *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009).

[31] Consulting Agreement at 5, ¶ 12.

[32] *In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011).

The arbitration clauses in the Consulting Agreements provide that "[t]he parties shall attempt good faith resolution of any disputes hereunder and further agree to submit any dispute pertaining to this Agreement to arbitration prior to commencing any legal action."[33] Thus, the plain language of the arbitration clauses in the Consulting Agreements limits their scope to: 1) "the parties" to the Consulting Agreements; and 2) disputes "pertaining to" the Consulting Agreements.[34] Arenal admits Solid Q is not a party to the Consulting Agreements.[35] Furthermore, the claims in this case do not pertain to the Consulting Agreements. Rather, Solid Q's claims are based entirely on Arenal's alleged misrepresentations and omissions of material fact regarding the Note. These claims are wholly independent from the Consulting Agreements and, therefore, fall outside the arbitration clauses' scope. To the extent Arenal alleges that it might in the future raise cross-claims and affirmative defenses that will trigger the arbitration provisions, that argument is rejected since the prospect of future claims cannot be the basis for compelling arbitration.

Moreover, even if those claims were currently part of the lawsuit, the principles outlined above would still apply. Arenal would have to show the claims in dispute "fall within the agreement's scope."[36] It is highly questionable that any claims against Solid Q could properly be considered within the scope of the arbitration agreement when SolidQ, a nonsignatory, is not suing on the Consulting Agreement but rather is suing on the Note. Solid Q should not be subjected to arbitration when it did not agree to arbitrate its claims with Arenal. This does not prohibit Arenal from requesting that the Sheltons submit to arbitration. But the Sheltons are not

---

[33] Consulting Agreement at 5, ¶ 12 (emphasis added).

[34] *Id.* (emphasis added).

[35] Motion at 19 (stating "Plaintiff Solid Q Holdings is not itself signatory to an arbitration provision").

[36] *In re Rubiola*, 334 S.W.3d at 223.

currently parties to this case nor is Arenal making such a request in the instant Motion. Rather, Arenal is requesting that Solid Q, the entity, submit to arbitration. This request is denied.

### III. Equitable Estoppel Does Not Apply to Solid Q's Claims

Although Arenal fails to establish that Solid Q was a signatory to the arbitration provision, Arenal may nevertheless compel arbitration if an exception applies.[37] Under Texas law, a signatory may require a non-signatory to arbitrate its claims under a theory of equitable estoppel.[38] Specifically, under "direct benefits estoppel"—the only type of equitable estoppel potentially relevant here—a non-signatory plaintiff may be required to arbitrate its claims against a signatory defendant, but only when the non-signatory plaintiff seeks the benefits of a contract while simultaneously attempting to avoid the contract's arbitration clause.[39] "If, however, a non-signatory's claims can stand independently of the underlying contract [containing the arbitration provision], then arbitration generally should not be compelled under this theory."[40]

Arenal incorrectly argues that Solid Q is equitably estopped from refusing to arbitrate.[41] Solid Q does not seek any benefit from the Consulting Agreements because Solid Q's suit is based entirely on the Note. Further, Arenal has not filed an answer to the Complaint, and therefore has no defenses on which its estoppel theory could be based. Consequently, direct benefits estoppel does not apply, and Arenal cannot compel Solid Q to arbitrate its claims.

Finally, Arenal relies on *Harvey v. Joyce*[42] and other cases to support its argument that Solid Q is required to arbitrate. However, *Harvey* and the other cases do not support Arenal's

---

[37] *See In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005).

[38] *See LDF Constr., Inc. v. Bryan*, 324 S.W.3d 137, 147–48 (Ct. App. Tex. 2010).

[39] *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 739; *see also Solid Q Holdings LLC*, 2015 UT App 272, ¶ 9).

[40] *Id.* at 739–40.

[41] Motion at 21.

[42] *Harvey v. Joyce*, 199 F.3d 790 (5th Cir. 2000).

7

position. In *Harvey*, three individuals—Harvey, Lofblad, and Joyce—were parties to an agreement containing an arbitration provision.[43] Those three individuals were involved in a disagreement involving a business named CTC in which they each had an interest.[44] Harvey and Lofblad sued Joyce and CTC.[45] Joyce and CTC moved to *stay* the litigation, arging that the arbitration provision in Harvey, Lofblad, and Joyce's agreement was all-encompassing and covered "all claims asserted by Harvey and Lofblad."[46] The district court denied the motion.[47] The Fifth Circuit reversed the denial of the motion and remanded to the district court with instructions to *stay all claims* pending arbitration, but to *compel arbitration only with respect to the claims asserted against Joyce*.[48] The claims asserted against the non-signatory entity CTC were *not* required to be submitted to arbitration.[49] *Harvey* therefore did not order the non-signatory corporation to arbitrate, but rather stayed the litigation, pending the arbitration between the signatory parties.[50]

The same conclusion was reached in *Hill v. G.E. Power Systems, Inc.*,[51] which Arenal also cites. In *Hill*, under similar circumstances to *Harvey*, the Fifth Circuit reversed a district court's refusal to stay litigation during pending arbitration between signatories to an arbitration

---

[43] *Id.* at 792.

[44] *Id.*

[45] *Id.*

[46] *Id.* at 793.

[47] *Id.* at 792.

[48] *Id.*

[49] *Id.*

[50] *Id.* at 795–96.

[51] *Hill v. G.E. Power Systems, Inc.*, 282 F.3d 343 (5th Cir. 2002).

agreement, but *affirmed the district court's refusal to compel* a non-signatory entity to arbitrate its claims.[52]

Here, Arenal's attorney stated in a letter prior to litigation that Arenal intended to move to *stay* any potential litigation involving the Note.[53] Staying litigation between SolidQ and Arenal pending arbitration between Arenal and the Sheltons may be supported by *Harvey* and *Hill*, but requiring Solid Q to arbitrate its claims is not. The cases cited by Arenal support denial of the Motion because Solid Q is not a signatory to the arbitration clause in the Consulting Agreements and has not sued to derive a benefit from the Consulting Agreements.

## ORDER

IT IS HEREBY ORDERED that Arenal's Motion[54] is DENIED.

Dated April 1, 2016.

BY THE COURT:

_____
David Nuffer
United States District Judge

---

[52] *Id.* at 345.

[53] Motion at 12 (citing letter from Arenal's attorney to the Sheltons stating that Arenal "will submit the disputes arising from the [Consulting Agreements] to Arbitration pursuant to Section 12 thereof, *and move to stay any Utah proceedings under the promissory note until the Arbitration process has concluded.*" (emphasis added)).

[54] Motion to Compel Arbitration ("Motion"), docket no. 23, filed Nov. 9, 2015.