IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SOLID Q HOLDINGS, LLC, a Utah limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>ARENAL ENERGY CORPORATION, a Texas corporation; RICHARD REINCKE, an individual; ERIC JOHNSON, an individual; BRIAN CHAPLIK, an individual; GUS SHOUSE, an individual; TOM BUIEL, an individual; and CHRIS COTA, an individual,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION TO SET ASIDE ENTRY OF DEFAULT**<br><br>Case No. 2:15-cv-00419-DN<br><br>District Judge David Nuffer |

Defendant Richard Reincke ("Mr. Reincke") filed a Motion to Set Aside Entry of Default[1] ("Motion to Set Aside"). Having considered the written submissions of the parties, the Motion to Set Aside is GRANTED.

**TABLE OF CONTENTS**

BACKGROUND ............................................................................................................................. 1
DISCUSSION ................................................................................................................................. 4
    A.    Mr. Reincke's Conduct Was Not Culpable............................................................. 5
    B.    Solid Q Will Not Be Prejudiced.............................................................................. 9
    C.    Mr. Reincke Has a Meritorious Defense................................................................ 9
ORDER......................................................................................................................................... 12

**BACKGROUND**

This dispute arises out of the losses Solid Q Holdings, LLC ("Solid Q") allegedly suffered after entering into a series of promissory notes with Arenal Energy Corp. ("Arenal"),

---

[1] Docket no. 73, filed August 28, 2017.

beginning in July of 2012.[2] Solid Q ultimately lent Arenal $150,000.[3] As collateral for the notes, Arenal ultimately pledged 1,500,000 shares of common stock with a predetermined conversion price of $0.10 per share.[4] Additionally, Defendant Eric Johnson and Mr. Reincke—Arenal's Chief Executive Officer and Chief Operation Officer, respectively—each signed personal guarantees of the notes.[5]

Solid Q asserts that Arenal breached the promissory notes and failed to make payments.[6] As a result, Solid Q took ownership of the 1,500,000 shares.[7] Solid Q alleges that this was a penalty for breach of the promissory notes and not in satisfaction of Arenal's obligation to repay the notes.[8] On this belief, Solid Q demanded that Arenal make payment of the interest and principal in addition to the stock collateral which was already in Solid Q's possession.[9]

Solid Q initially filed a complaint against Arenal, Mr. Reincke, and others in the Fourth Judicial District Court in the State of Utah in August of 2013.[10] That case alleges state law claims, seeking to collect on the Note as if it were a debt instrument, and alleging conspiracy and fraud. Solid Q later filed the current action against Arenal, Mr. Reincke, and others in this court on June 15, 2015.[11] In this case, Solid Q alleges several causes of action against Defendants,

---

[2] Complaint ("Federal Complaint"), ¶¶ 51–52, docket no. 2, filed June 15, 2015.

[3] *Id.*

[4] *Id.* at ¶ 73; Declaration of Richard Reincke ("First Declaration of Reincke"), ¶ 6, docket no. 74, filed August 28, 2017.

[5] Federal Complaint at ¶¶ 3–4, 56.

[6] *Id*. at ¶ 57.

[7] *Id.* at ¶ 58.

[8] *Id.* at ¶ 59.

[9] *Id.* at ¶ 60.

[10] Civil Complaint, *Solid Q Holdings LLC vs. Arenal Energy Corporation*, Third District Court, State of Utah, Case No. 130401096, attached as Exhibit A, docket no. 15-1, filed August 5, 2015.

[11] Federal Complaint.

including a violation of Section 10(b) of the Securities Exchange Act of 1934 ("1934 Act") and Rule 10b-5;[12] control person liability for federal securities violations;[13] and Utah securities violations.[14]

Mr. Reincke, pro se, first submitted a filing on his own behalf in October of 2016.[15] At that point, almost a year and a half had passed since this case was filed. However, Solid Q did not seek an entry of default against Mr. Reincke during that time. Mr. Reincke's initial filing was a Motion to Dismiss based on a mandatory forum selection clause and the doctrine of forum non conveniens.[16] The motion was denied in March of 2017.[17] Mr. Reincke subsequently filed a timely Motion to Reconsider[18] which was likewise denied on May 23, 2017.[19] Following this second denial, Mr. Reincke failed to file an Answer to the Complaint within the deadline proscribed by Rule 12(a)(4) of the Federal Rules of Civil Procedure.[20] As a result, Solid Q sought an entry of default against Mr. Reincke on August 9, 2017[21]—64 days after the deadline

---

[12] *Id.* at ¶¶ 72–84.

[13] *Id.* at ¶¶ 85–92.

[14] *Id.* at ¶¶ 93–104.

[15] Notice of Motion and Motion to Dismiss Case Based on a Mandatory Forum Selection Clause and the Doctrine of Forum Non Conveniens ("First Motion to Dismiss"), docket no. 54, entered October 13, 2016.

[16] *Id.* at 1.

[17] Memorandum Decision and Order Denying [54] Motion to Dismiss, docket no. 62, entered March 8, 2017.

[18] Notice of Motion and Motion for Reconsideration of Motion to Dismiss Case Based on a Mandatory Forum Selection Clause and the Doctrine of Forum Non Conveniens ("Motion to Reconsider"), docket no. 64, filed March 20, 2017.

[19] Memorandum Decision and Order Denying [64] Motion to Reconsider, docket no. 67, entered May 23, 2017.

[20] Fed. R. Civ. P. 12(a)(4)(A) ("[I]f the court denies the motion or postpones its disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action.")

[21] Request for Entry of Default against Richard Reincke ("Request for Entry of Default"), docket no. 68, filed August 9, 2017.

to file the Answer had passed. A default certificate against Mr. Reincke was entered on August 14, 2017.[22]

On August 16, 2017,—two days after the entry of default against him—Mr. Reincke submitted a second Motion to Dismiss.[23] In this second Motion to Dismiss, Mr. Reincke argued that Solid Q cannot seek relief under Section 10(b) of the 1934 Act because the promissory note in question is not a security as defined by Section 3(a)(10) of the Act.[24] Solid Q responded, arguing that Mr. Reincke was no longer entitled to raise merits-based arguments due to the entry of default against him.[25] Mr. Reincke subsequently filed the current Motion to Set Aside Default on August 28, 2017[26]—14 days following the Entry of Default against him.

## DISCUSSION

Federal Rule of Civil Procedure 55(c) provides that a "court may set aside an entry of default for good cause[.]"[27] The principal factors in determining whether good cause exists are: "(1) whether the default was the result of culpable conduct of the defendant, (2) whether the plaintiff would be prejudiced if the default should be set aside, and (3) whether the defendant presented a meritorious defense."[28] However, "[t]hese factors are not 'talismanic' and the court may consider other factors."[29] The standard for good cause under Rule 55(c) "poses a lesser

---

[22] Clerk's Entry of Default Certificate as to Richard Reincke, docket no. 69, entered August 14, 2017.

[23] Notice of Motion and Motion to Dismiss Case based on Failure to State a Claim ("Second Motion to Dismiss"), docket no. 70, filed August 16, 2017.

[24] *Id.* at 5.

[25] Objection to Defendant's Untimely Filing of Notice of Motion and Motion to Dismiss after Entry of Default, 1, docket no. 72, filed August 25, 2017.

[26] Motion to Set Aside, docket no. 73, filed August 28, 2017.

[27] FED. R. CIV. P. 55(c).

[28] *Hunt v. Ford Motor Co.*, 65 F.3d 178, 1995 WL 523646 at *3 (10th Cir. 1995); *see also Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 750 (10th Cir. 2009).

[29] *Hunt*, 1995 WL 523646 at *3.

standard for the defaulting party than the excusable neglect which must be shown for relief from judgment under" Rule 60(b).[30] Furthermore, "[b]ecause defaults are disfavored, the court resolves disputes connected with a Motion to Set Aside Default in favor of the defendant so as to encourage a decision on the merits."[31]

Having considered these factors, resolving all factual disputes in favor of the defendant, Mr. Reincke's Motion to Set Aside Default is GRANTED.

### A. Mr. Reincke's Conduct Was Not Culpable

"Generally, a defendant's conduct is considered culpable if he has defaulted willfully or has no excuse for the default."[32]

Solid Q alleges that Mr. Reincke willfully evaded answering the Complaint for over two years in order to delay mandatory disclosures of securities fraud litigation, as required by the Private Securities Reform Act.[33] Solid Q further asserts that Mr. Reincke was aware of court rules and procedure and was in communication with Solid Q's counsel, yet never requested an extension.[34] This would demonstrate culpable conduct by Mr. Reincke.[35]

Mr. Reincke denies he took deliberate action to delay mandatory disclosure of this case.[36] He says he acted in good faith, believing that the parties were pursuing good faith settlement

---

[30] *Pinson*, 316 F. App'x at 750 (quoting *Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 775 n.6 (10th Cir. 1997)).

[31] *Herber v. United States*, 145 F.R.D. 576, 577 (D. Utah 1992) (citation omitted); see also *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970).

[32] *Hunt*, 1995 WL 523646 at *3.

[33] Opposition to Motion to Set Aside Default of Richard Reincke ("Memorandum in Opposition"), 2, docket no. 76, filed September 11, 2017.

[34] *Id.* at 2–4.

[35] *Id.* at 4.

[36] Declaration of Richard Reincke in Support of Reply to Plaintiff's Opposition to Motion to Set Aside Default ("Third Declaration of Reincke"), ¶ 7, docket no. 77, filed September 25, 2017.

negotiations.[37] Three days after Mr. Reincke's Motion to Reconsider had been denied, Solid Q contacted Mr. Reincke in an attempt to settle the case.[38] During this conversation, Mr. Reincke notified Solid Q that he was preparing a motion for summary judgment[39] on its federal securities causes of action.[40] Mr. Reincke intended to argue that the promissory note between the parties did not constitute a "security" as defined in Section 3(a)(10) of the 1934 Act.[41] Both Mr. Reincke and Solid Q acknowledge that they discussed the merits of this forthcoming motion.[42]

Mr. Reincke alleges to have made a settlement offer during the course of this conversation.[43] Mr. Reincke contends that he had prepared a motion for summary judgment, but did not timely file it in order to prevent Solid Q from incurring additional attorney fees while the parties were involved in good faith negotiation.[44] The claim that his motion was ready is supported by the Motion to Dismiss that Mr. Reincke filed on August 16, 2017[45]—only two days after he received notice of Solid Q's Motion for Entry of Default.[46]

Mr. Reincke further alleges that Solid Q acted in bad faith when it submitted the Request for Entry of Default.[47] This allegation is based on the timing of the motion.[48] Mr. Reincke

---

[37] Motion to Set Aside at 5.

[38] First Declaration of Reincke at ¶ 5.

[39] Ultimately, Mr. Reincke filed this motion as a Motion to Dismiss rather than as a Motion for Summary Judgment. *See* Second Motion to Dismiss.

[40] First Declaration of Reincke at ¶ 6.

[41] *Id.* at ¶¶ 7–8; 21.

[42] *Id.* at ¶ 7; Declaration of Patrick Ascione in Support of Memorandum in Opposition to Defendant Reincke's Motion to Set Aside Default ("Declaration of Ascione"), docket no. 76-1 at ¶ 6, filed September 11, 2017.

[43] First Declaration of Reincke at ¶ 9.

[44] First Declaration of Reincke at ¶ 10.

[45] Second Motion to Dismiss.

[46] First Declaration of Reincke at ¶ 24.

[47] Motion to Set Aside at 5.

[48] Motion to Set Aside at 5.

currently resides in California.[49] Mr. Reincke, like most pro se litigants, receives notice of filings via U.S. Mail. On August 14, 2017, Mr. Reincke was scheduled to appear in the Fourth Judicial District Court in the State of Utah to address the state court action that Solid Q had initiated against him.[50] Solid Q knew that Mr. Reincke was scheduled to appear in Utah on that date and filed its Request for an Entry of Default on August 9, 2017.[51] As a result, Mr. Reincke says he did not receive notice of the request via U.S. mail until he had returned to California on August 14, 2017.[52] By the time he had received notice, the certificate of default had already been entered against him.[53] Mr. Reincke contends that Solid Q intentionally filed the Request for Entry of Default at a time that it knew that Mr. Reincke would not receive timely notice.[54]

While the issue of culpability presents a close case, the scales tip towards a finding of non-culpability. On one hand, the current action is still in its early stages despite having been initiated over three years ago. Of those two years, Mr. Reincke did not participate in the litigation for the first year and a half and has yet to file a responsive pleading to the Complaint. Despite proceeding pro se, Mr. Reincke is a paralegal with 30 years' experience[55] and has demonstrated a certain degree of legal training.

On the other hand, Solid Q chose not to move for an entry of default against Mr. Reincke for the year and a half during which Mr. Reincke was absent from the litigation. It was not until

---

[49] First Declaration of Reincke at ¶ 16.

[50] *Id.*

[51] Motion to Set Aside at 5; Request for Entry of Default.

[52] First Declaration of Reincke at ¶ 24.

[53] *Id.* at ¶ 25.

[54] Motion to Set Aside at 5.

[55] Memorandum in Opposition at 2.

Mr. Reincke had discussed a potentially meritorious defense[56] with Solid Q's counsel that Solid Q moved for the entry of default. The timing of the Request for Entry of Default is troubling, especially in light of the failure of Solid Q's counsel to follow Rule 16 of the Utah Standards of Professionalism and Civility that this court has adopted.[57] Rule 16 provides that "[l]awyers shall not cause the entry of a default without first notifying other counsel whose identity is known, unless their clients' legitimate rights could be adversely affected."[58] According to Solid Q's own account, Mr. Reincke was in communication with Solid Q's counsel,[59] yet Solid Q did not notify him of its intent to request an entry of default against him. Furthermore, Mr. Reincke did not receive notice of the request until after he had returned to California, even though he had met with Solid Q's counsel in person at the state court hearing that same day.[60] Although there was ample opportunity to notify Mr. Reincke of the request for default, Solid Q failed to do so.

Mr. Reincke has evidenced good faith by submitting his Second Motion to Dismiss and Motion to Set Aside default only two and fourteen days respectively after the entry of default against him.[61] This also supports Mr. Reincke's assertions that he had prepared a motion, but delayed filing it due to his desire not to cause Solid Q to incur additional attorney fees while they were engaged in good faith settlement negotiations.

---

[56] *See infra* Part C.

[57] DUCivR 83-1.1(g) ("The court adopts the Utah Standards of Professionalism and Civility to guide attorney conduct in cases and proceedings in this court.").

[58] Utah Standards of Professionalism and Civility 16 (available at https://www.utcourts.gov/courts/sup/civility.htm) (last accessed February 26, 2018).

[59] Memorandum in Opposition at 2.

[60] First Declaration of Reincke ¶ 24; Third Declaration of Reincke, Exhibit A, docket no. 77-1, filed September 25, 2017.

[61] First Declaration of Reincke ¶ 20; *see Pinson v. Equifax Credit Info. Servs., Inc.*, 316 F. App'x 744, 750 (10th Cir. 2009); *Gemalto S.A. v. Cpi Card Grp., Inc.*, No. 15-02776-RM-MJW, 2016 WL 233394, at *3 (D. Colo. Jan. 20, 2016) ("Promptly moving to set aside is evidence of good faith.").

As a general matter, ongoing settlement discussions do not excuse a party's responsibility to file a responsive pleading under Rule 12(a) of the Federal Rules of Civil Procedure.[62] However, after resolving factual disputes in favor of Mr. Reincke and after taking into account his status as a pro se litigant, there is strong indication that Mr. Reincke's inaction was not the result of any willful desire to delay proceedings and prejudice Solid Q.[63]

### B. Solid Q Will Not Be Prejudiced

Solid Q will not suffer prejudice by the granting of Mr. Reincke's Motion to Set Aside. Solid Q argues that it will be prejudiced by Mr. Reincke's attempt to introduce new defenses, prolong this action, and increase Solid Q's costs.[64] However, Solid Q filed this lawsuit with the understanding that it would be required to prove the merits of its claims.[65] Discovery has not yet commenced and only one of the six remaining defendants has filed an answer.[66] Setting aside the default will not result in further delay as Mr. Reincke's second Motion to Dismiss has already been filed and is awaiting Solid Q's memorandum in opposition.

### C. Mr. Reincke Has a Meritorious Defense

The final consideration in setting aside a default is whether Mr. Reincke has a meritorious defense to the action.[67] "The parties do not litigate the truth of the claimed defense in the motion hearing. Rather, the court examines the allegations contained in the moving papers to

---

[62] *See QFA Royalties LLC v. Liberty Holding Grp., Inc.*, No. 06-CV-00948-LTB-MEH, 2007 WL 2071633, at *2 (D. Colo. July 16, 2007).

[63] *See Gemalto*, 2016 WL 233394, at *3 (declining to find that an error of law evidences culpable conduct); *Kinnear Corp. v. Crawford Door Sales Co.*, 49 F.R.D. 3, 8 (D.S.C. 1970) (pro se defendant's error of law, consisting of writing to plaintiff's attorney in response to a complaint, but not filing his answer with the court constituted excusable neglect or mistake).

[64] Memorandum in Opposition at 4.

[65] *See United States v. Talmage*, No. 1:16-cv-19, 2016 WL 7007321, at *3 (D. Utah Nov. 30, 2016).

[66] *See* Answer of Defendant Brian Chaplik, docket no. 63, filed March 14, 2017.

[67] *Hunt v. Ford Motor Co.*, 65 F.3d 178, 1995 WL 523646, at *3 (10th Cir. 1995).

determine whether the movant's version of the factual circumstances surrounding the dispute, if true, would constitute a defense to the action."[68] Courts will not consider "vague and general assertions;" rather, the movant's allegations must be accompanied by supporting facts.[69]

Solid Q advances several causes of action against Mr. Reincke, including a violation of Section 10(b) of the Securities Exchange Act of 1934 ("1934 Act") and Rule 10b-5,[70] control person liability of federal securities violations,[71] and Utah securities violations.[72] Mr. Reincke argues that Solid Q cannot seek relief under federal securities law because the promissory note that forms the basis for the current action is not a security as defined by Section 3(a)(10) of the 1934 Act.[73]

Under the "family resemblance" test,[74] courts consider the following factors in determining whether a promissory note amounts to a security: (1) the buyer's and seller's motivations; (2) the plan of distribution; (3) the investing public's expectations, and (4) whether risk-reducing factors are present.[75] Although Mr. Reincke does not refer to the "family

---

[68] *In re Stone*, 588 F.2d 1316, 1319 (10th Cir.1978).

[69] *Id.* at 1321.

[70] Federal Complaint at ¶¶ 72–84.

[71] *Id.* at ¶¶ 85–92.

[72] *Id.* at ¶¶ 93–104.

[73] Motion to Set Aside at 4. Mr. Reincke further alleges that Solid Q (1) fraudulently induced him to enter into the personal guaranty and stock pledge agreement; (2) breached the implied covenants of good faith and fair dealing; and (3) has unclean hands. *Id.* These arguments will not be considered as potentially meritorious defenses because of the lack of supporting factual allegations. *In re Stone*, 588 F.2d at 1321.

[74] Solid Q argues that a promissory note collateralized by stock is not subject to the "family resemblance" test. Memorandum in Opposition at 6. In support of this argument, Solid Q cites to the Supreme Court's opinion in *Rubin v. United States,* 449 U.S. 424 (1981). However, *Rubin* addressed the issue of whether "a pledge of stock . . . as collateral for a loan is an 'offer or sale' under § 17(a) of the Securities Act of 1933." 449 U.S. 424, 425 (1981). It did not address whether a loan instrument qualifies as a security solely by virtue of being collateralized by stock. Moreover, this opinion predates *Reves v. Ernst & Young* in which the Supreme Court adopted the "family resemblance" test as the manner in which courts were to determine whether a promissory note qualifies as a security. 494 U.S. 56, 64–65 (1990). This is not to say that Solid Q's argument is completely rejected. Solid Q may elaborate upon this argument in future pleadings.

[75] *Reves*, 494 U.S. at 65–67.

resemblance" test by name, he does argue and provide facts in support of some of these factors. For example, Mr. Reincke argues the promissory note bears risk-reducing factors—such as the stock pledge agreement and personal guarantees—that are not generally associated with securities.[76] He additionally argues that the promissory note was an individually negotiated agreement that was not offered to the public at large.[77]

Another potentially meritorious defense to the current action is that Solid Q is seeking to recover on the promissory notes, even though it had already realized on the collateral. Accordingly, Mr. Reincke has satisfied his burden of presenting potentially cognizable defenses to Solid Q's claims.

---

[76] Second Motion to Dismiss, Exhibit A, 10, docket no. 74-1, filed August 28, 2017.

[77] *Id.* at 13.

**ORDER**

For the reasons stated herein, it is therefore ORDERED that:

(1)  Mr. Reincke's Motion to Set Aside Default is GRANTED.

(2)  Mr. Reincke shall file an Answer to the Complaint with the Clerk of the Court within twenty-one (21) days of this Order.

(3)  Plaintiff Solid Q shall file its Memorandum in Opposition to Mr. Reincke's second Motion to Dismiss within fourteen (14) days of this Order.

(4)  The parties must meet, confer, and within fourteen (14) days of the date of this Order file an attorneys' planning meeting report and submit a proposed scheduling order as outlined at http://www.utd.uscourts.gov/attorney-planning-meeting-and-report.

Dated July 24, 2018.

BY THE COURT:

_____
David Nuffer
United States District Judge